[Civ. No. 16109. Second Dist., Div. Three. July 14, 1948.]

PATRICIA HERMAN, Appellant, v. LEROY CAMPBELL, as Trustee, etc., et al., Respondents; A. OTIS BIRCH, Cross-defendant and Respondent.

Sturzenacker & Isenberg for Appellant.

Syril S. Tipton, William M. Wallace and George Acret for Respondents.

SHINN, Acting P. J.—Plaintiff brought this action seeking a declaratory judgment that she is the holder of a valid and subsisting sublease upon certain real property in the city of Los Angeles, is rightfully in possession and entitled to remain in possession for the duration of the term of the lease. Roy Campbell, for himself and as trustee, filed a cross-complaint praying for restitution of the premises and damages for the use and occupation thereof by plaintiff. Findings and judgment were in favor of the cross-complainants and the judgment awarded them possession of the premises and also damages in the sum of $2,295, and the further sum of $225 per month until plaintiff should surrender possession. This appeal is by plaintiff and cross-defendant.

The premises in question are located on the northwesterly corner of Twelfth Street and Grand Avenue, and are improved with buildings occupied as rooming houses. In 1928, Wilbur

Dudley Campbell and his wife, then owners of the property, leased the same to one Van Vrankin for a term of 99 years. Roy Campbell, individually, and as trustee, is the successor in interest of the former owners; defendant A. Otis Birch acquired the leasehold interest of Van Vrankin. On November 1, 1938, Birch subleased one of the buildings to plaintiff who later acquired the furniture contained in the other buildings and secured from Birch an extension of lease upon the premises for a term ending October 31, 1948. She has not failed to perform her obligations under her sublease from Birch. The latter, however, defaulted in the payment of rental and other sums under the basic lease. The court made extensive findings, none of which is challenged for insufficiency of evidentiary support. It was found that on February 15, 1946, Birch was in default in the payment of rent under the basic lease in a sum in excess of $160,000; that in March of 1944, and on several occasions thereafter, Campbell served Birch with written notice of default; that the defaults of Birch in payment of rent were not corrected; that on March 14, 1946, Campbell served Birch with another written notice of default and the same not having been cured, on or about March 21, 1946, he served Birch with a notice that he exercised his option to terminate the lease by reason of such defaults and failure to cure the same; that said Birch relinquished all interest in the premises and right to the possession, and no longer claims any right, title or interest in or to the same, but that plaintiff and cross-defendant refused and still refuses to deliver up possession of said premises. It was alleged in the complaint that in 1935, and later, Campbell had brought numerous actions against Birch, 17 in number, for rent which had fallen due under the lease, and it was in evidence that many judgments for rent had been obtained against Birch and remained unsatisfied. It was found that on or about March 22, 1946, Birch paid to Campbell approximately $80,000 on account of the judgments outstanding against him. It was also found that these judgments have been satisfied of record. It was alleged by plaintiff that the termination of the basic lease was the result of a conspiracy between Campbell and Birch, the purpose of which was to oust plaintiff from the premises. All of these allegations were found to be untrue. Appellant's sole contention here is that Campbell did not terminate the lease because of the defaults of Birch but that it was voluntarily surrendered by Birch, from which premise it is argued that appellant's sub-

lease was not affected by the surrender of the basic lease. The findings as a whole negative the factual basis of this argument. The facts found are set forth in 49 separate findings covering in large part matters that were immaterial or not in issue. There was a finding that defendant Campbell acted in good faith in declaring Birch to be in default and in electing to terminate the lease. It was further found that practically all of Birch's indebtedness under the lease of about $160,000 had been reduced to judgment by March 21, 1946; that Birch had been unable to pay said rentals or any part of said judgments other than to pay $80,000 on account thereof on March 21, 1946; that the lease provided for termination in case of default; and that Campbell "did declare a forfeiture of said lease under the aforesaid provisions for forfeiture and by reason of the aforesaid defaults and judgments." Other findings relate to the efforts that had been made by Campbell to collect the judgment by the levy of garnishments and other proceedings. In an amendment to the answer of Birch it was alleged, and the court found it to be true, "That the plaintiff took the sublease and the extension thereof sued upon herein and attached as exhibits to her complaint with full knowledge that said lease was hopelessly in default and with full knowledge that the defendant was unable to pay said rentals and said judgments and with the express understanding that she would assume the risk of such lease being forfeited and that she would rely solely upon her expectation and hope that said Campbells would not declare said lease forfeited. That the plaintiff thereby and expressly waived all claim of liability against this defendant by reason of any forfeiture of said lease and in equity and good conscience should be and is estopped from asserting any claim against this defendant by reason of such forfeiture."

 The case presented by the record is the following: A lessee under a long term lease is unable to meet his obligations in the payment of rent, taxes, assessments, etc.; the lessor puts forth extreme effort to enforce performance by the lessee, all without success; he gives successive notices of default but defers for several years to exercise the right to terminate the lease, obviously for the reason that he considered it would be to his disadvantage to terminate it; eventually, being unable to enforce performance, he does declare the lease terminated by reason of the defaults of the lessee and not otherwise; the sublessee, who became such with full knowledge of the facts,

claims the right to remain in possession for the full term of her sublease, notwithstanding the termination of the basic lease. If, indeed, these facts present any serious question as to whether the rights of the sublessee were terminated with the termination of the basic lease the obvious and inescapable answer is that they were so terminated. The law provides no answer different from that which would be given by anyone slightly informed as to the methods pursued in such matters in the world of business. An owner of property who permits it to be occupied by another upon the condition that compensation therefor be paid in specified amounts and at specified times, and who is unable to collect the sums due him, cannot justly be deprived of both possession and the agreed compensation by one who claims under the defaulting lessee. We have the additional circumstance here that the sublessee entered into the sublease with full knowledge that her sublessor was seriously in default under the basic lease, voluntarily and advisedly running the risk that the same would be terminated by the owner. Appellant cites *Buttner* v. *Kasser*, 19 Cal.App. 755 [127 P. 811], saying that the facts there were almost identical with those of the present case. The facts were not at all similar. The Buttner case was one in which a sublessor voluntarily surrendered his lease to his lessor without the consent of the sublessee. It was held that the latter was not bound by the surrender. The principle there stated, with citation of numerous authorities, was that (p. 760) : "A tenant may surrender his estate to his landlord, but if he have since its commencement created some minor interest out of it or have made a under lease he cannot, by surrendering, destroy the charge or affect the estate of the underlessee." This, of course, is not our case. The court remarked in the Buttner case (p. 760) : "It is not doubted but that upon a re-entry for forfeiture of the lease held by the sublessor the rights of the sublessee under his lease will terminate." All of the other cases relied upon by appellant involved the voluntary surrender of leases and not their forfeiture or termination by reason of defaults of a lessee.

The law which governs the instant case is stated in 32 American Jurisprudence, page 344, as follows: "The right of the sublessee to the possession of the premises as against the original lessor terminates with the lease or term of the original lessee, and since a subtenant holds the premises subject to the performance of the terms and conditions impressed upon the

estate by the provisions of the original lease, his rights are generally held to be terminated when the original lessor declares a forfeiture of the original lessee's term based upon the latter's nonperformance of obligations imposed on him. Thus, if the original tenant has incurred a forfeiture of his lease, and for that reason the landlord annuls the lease, the landlord is entitled to the possession as against the sublessee." And further, at page 746: "Where a cause of forfeiture has arisen, the fact that the lessee consents to the enforcement of the forfeiture does not render the transaction a surrender as distinguished from a forfeiture so as to bring it within the rule that a lessee cannot by a surrender affect the estate or the interest of third persons held under him" etc. (See, also, *Brock* v. *Desmond & Co.*, 154 Ala. 634 [45 So. 665, 128 Am.St.Rep. 71], 16 R.C.L. 878.) These principles are elementary in the law of contracts and the law of real property.

The judgment is affirmed.

Wood, J., and McComb, J. assigned, concurred.

A petition for a rehearing was denied August 9, 1948, and appellant's petition for a hearing by the Supreme Court was denied September 8, 1948.